**Willie Ruth TATE, Plaintiff and Appellee,**

v.

**J.B. TATE, Sr., Defendant and Appellant.**

No. 14980.

Supreme Court of South Dakota.

Considered on Briefs March 19, 1986.
Decided Oct. 8, 1986.

Richard A. Johnson, of Pruitt, Matthews & Muilenburg, Sioux Falls, for defendant and appellant.

Catherine M. McNamara, of East River Legal Services, Sioux Falls, for plaintiff and appellee.

SABERS, Justice.

This is an appeal from a judgment of the trial court granting Willie Ruth Tate a divorce from J.B. Tate, Sr. We affirm.

### 1. FACTS

Willie Ruth and J.B. were married on July 12, 1965. Three children were born of the marriage, all of whom were minors at the time of the divorce. Willie Ruth filed for a divorce in May of 1984. J.B. counterclaimed and sought a divorce from Willie Ruth. The trial court concluded that Willie Ruth was entitled to a divorce on the grounds of extreme cruelty. The court ordered J.B. to pay Willie Ruth $200 per month in alimony until such time as she remarries. The court also ordered a division of the property, awarding Willie Ruth certain items of personal property and a cash settlement in the amount of $4,000, payable in four annual installments. The court awarded J.B. the personal property in his possession, a 1983 automobile, a house in St. Louis, and the $371 in his checking account.

### 2. REFUSAL TO GRANT A DIVORCE TO J.B.

The first issue raised on appeal by J.B. is whether the trial court erred in not granting him a divorce on the grounds of extreme cruelty. The trial court specifically found that J.B. treated Willie Ruth "with extreme cruelty within the meaning of SDCL 25-4-2(2) and SDCL 25-4-4," but the court entered no findings concerning cruelty on the part of Willie Ruth. J.B. argues that the record in this case sets out more than sufficient grounds for the award of a divorce to him.

On the review of the trial court's findings in a divorce case, due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses and to weigh their testimony. The court's findings will not be set aside unless they are clearly erroneous. *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980). SDCL 15-6-52(a).

During the trial in this case, both parties presented testimony concerning the cruelty of the other party. Willie Ruth testified that within a year of the divorce, J.B. hit her in the mouth and shoulder and knocked her down on a bed. She also stated in an affidavit that J.B. had threatened to "blow her brains out." There was conflicting testimony about alleged cruelty on the part of Willie Ruth. J.B. stated that he once saw Willie Ruth coming out of a motel with a man who works with him; he said that this event caused him a great deal of mental distress. However, Willie Ruth denied knowing the man in question. After reviewing this conflicting testimony, we cannot say that the trial court's findings are clearly erroneous or that the court erred when it failed to grant a divorce to J.B.

### 3. ALIMONY AND PROPERTY DIVISION

J.B. contends that the trial court abused its discretion when it ordered him to pay

$200 per month in alimony and awarded Willie Ruth the $4,000 cash property settlement. He argues that he is financially overburdened and cannot come up with the money to make such payments.

■ The trial court has broad discretion in awarding alimony and making a property division, and its judgment will not be set aside unless it clearly appears that it abused its discretion. *Goehry v. Goehry,* 354 N.W.2d 192 (S.D.1984). The factors to be considered in determining the amount of alimony are the length of the marriage; the parties' respective earning capacities; their respective financial condition; their respective age, health, and physical condition; their station in life; and the relative fault of the parties. *Booth v. Booth,* 354 N.W.2d 924 (S.D.1984). The factors to be considered in dividing marital property are similar to those used in determining alimony, except that the trial court must also take into account the value and income-producing capacity of the property and the contribution of each party to the accumulation of the property. *Garnos v. Garnos,* 376 N.W.2d 571 (S.D.1985). This court reviews the award of alimony and the property division together in determining whether the trial court abused its discretion. *Booth, supra.*

### A. Alimony Award

■ In examining the award of alimony in this case, we can find no abuse of discretion by the trial court. J.B. is fifty-five years old and has worked for John Morrell & Co. for the past twenty-eight years; he presently earns about $8.25 per hour. J.B.'s income was approximately $23,000 in 1984 and $26,000 in 1983. Willie Ruth has devoted herself to the role of wife, homemaker, and mother during the twenty years of the marriage. She graduated from high school but has no further job training. Her last job paid $4.00 per hour. Clearly, Willie Ruth's earning capacity is much smaller than J.B.'s. Also, as stated above, the trial court found J.B. at fault for the divorce on the grounds of extreme cru-

elty. *See Temple v. Temple,* 365 N.W.2d 561 (S.D.1985); and *Booth, supra.*

### B. Property Division

■ With regard to the property division, the trial court awarded a relatively significant cash settlement to Willie Ruth; however, the settlement is payable over four years. Furthermore, Willie Ruth did not receive any income-producing property. J.B. received the house in St. Louis, which he rents to four of his adult children from a prior marriage; each of the children is expected to pay $80 per month in rent. J.B. also received the couple's automobile. The record is clear that the trial court had a regard for equity and the circumstances of the parties when it divided the property. SDCL 25–4–44.

The judgment is affirmed.

WUEST, C.J., and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

It appears that the Tates were married for 20 years lacking a few months. Willie Ruth married J.B. when she was 20 years of age and was 15 years younger than J.B. She was never previously married. Willie Ruth helped raise 9 children ranging in ages from 5 years to 14 years who were not the issue of this marriage but were the children of J.B.; additionally, she helped raise the 3 children of this marriage.

When this case was tried, Willie Ruth was unemployed. Her previous employment was all unskilled. Her employment record reveals poor-paying jobs as a school-crossing guard, a waitress, and a cleaning lady. Obviously, the trial court believed that she needed money to fend for herself in the world.

Willie Ruth, per testimony herein, has diabetes and high blood pressure which she controls with medication. Therefore, she is not in the best of health and these two health problems were serious matters tak-

en into consideration by the trial court in awarding $200 per month alimony.

There was very little property to divide in this case and so Willie Ruth has no significant estate to draw upon to help her fend as she fulfills her life expectancy. Obviously, the alimony award is moot if she remarries. Also to be considered is the fact that J.B. may petition for a reduction in alimony if he is unable to pay the $200 per month alimony which must be established to the trial court's satisfaction. J.B.'s finances are such that he can pay this alimony to prevent Willie Ruth from being a burden upon the public coffer.

The alimony award granted by this trial court has, as its basic purpose, to help provide food, clothing, habitation, and other necessaries for support. Certainly, this alimony award is not penal in nature. Willie Ruth has established the marriage, that she needs and is entitled to support and the husband is able to provide it.

As recently as January 1986, writing for this Court, this author wrote:

> She should not become a public charge. She is fifty-two years old, has a limited education, and remote employment experience. That alimony, however, must be based upon what Elizabeth should have, that is, the reasonableness of her needs, and that which Bill can and ought to pay. *Grant v. Grant*, 5 S.D. 17, 57 N.W. 1130 (1894).

*Straub v. Straub*, 381 N.W.2d 260, 262 (S.D.1986).

This author notes the reliance in *Straub* upon *Goehry v. Goehry*, 354 N.W.2d 192 (S.D.1984), a unanimous opinion, also written by this author. In *Goehry*, at 195 thereof, it is stated:

Further, it is quite clear that husband has the greater income-producing capacity; his health, his ability to earn a living, and his business all verify this fact. While wife has a home, she is unable to work at this time and is in poor health. Again, the trial court's findings are not a clear abuse of discretion with regard to alimony and, thus, will not be set aside. *Krage [v. Krage*, 329 N.W.2d 878, 879 (S.D.1983)].

Considering *Grant v. Grant*, 5 S.D. 17, 57 N.W. 1130 (1894), *Goehry, Straub*, and the factors outlined in *Morrison v. Morrison*, 323 N.W.2d 877 (S.D.1982), I cannot venture nor hold that there was a clear abuse of discretion in awarding alimony herein. The trial judge saw this lady's need, knew from testimony that her ex-husband could pay the support, and realized that she had poor health/no job/and very few assets. As I expressed in *Herndon v. Herndon*, 305 N.W.2d 917, 920 (S.D.1981) (Henderson, J., concurring in part and dissenting in part):

> In conclusion, I must agree with the Kentucky Court of Appeals when it stated that "[t]heoretically, alimony or maintenance is based in part on a consideration of the needs of the parties as well as their respective abilities to meet them." *Gann v. Gann*, 347 S.W.2d 540, 542 (Ky. App.1961).