Paulette A. BELL, Plaintiff
and Appellee,

v.

Stephen G. BELL, Defendant
and Appellant.

No. 17798.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 1992.

Decided April 21, 1993.

Richard A. Johnson of Strange, Farrell, Johnson & Casey, Sioux Falls, for plaintiff and appellee.

Thomas J. Nicholson of McFarland and Nicholson, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

Steve Bell appeals the circuit court's judgment, divorce decree and denial of his motion to reopen. We affirm in part, reverse in part, and remand.

1. Steve's combined wage during this period was

## FACTS

Steve and Paulette were married April 22, 1972, at Sioux Falls, South Dakota, and have lived there throughout most of their marriage. Three children were born to the marriage: Bradley, on May 17, 1973; Robin, on March 31, 1975; and Travis, on April 14, 1980. The parties are each thirty-nine years old.

Steve has a high school education. Prior to the marriage of the parties, Steve had been employed at American Freight in Sioux Falls. He worked there as a utility mechanic until they closed in 1988. Steve then sought employment in the Sioux Falls, Minneapolis and Kansas City areas. After three months, Steve moved to Kansas City, alone, when he found a job with a trucking firm which paid better wages than did the available jobs in Sioux Falls. Steve has stayed in the Kansas City area, living in the office where his brother works. Steve had been returning to Sioux Falls several weekends a month until this action was started. His Kansas City firm down-sized after one and one-half years and he lost his job.

At about this time, Steve obtained a part-time job as a gardener which developed into a temporary full-time job. While working as a full-time gardener, he also took a full-time job at Overnight Freight. Steve worked sixteen hours per day for about six weeks at which time the gardening job ended.[1] In December, 1990, Overnight Freight laid him off for lack of work. Steve remained unemployed until March, 1991, when he was temporarily called back by Overnight Freight for several weeks. Steve has since been unsuccessful in his search for truckline employment despite numerous inquiries. Steve was unemployed at the time of this divorce trial and his unemployment benefits had expired.

Steve has high blood pressure and diabetes which appear to be controlled with medications. In addition, due to a blood infection in May, 1991, he has pericarditis, a heart problem.

about $3,500/month.

Paulette has a high school education. When she was not working outside the home, she took care of the children and the household. Paulette did some babysitting while the children were little and worked as a waitress in 1981–82. Due to a bad back, Paulette did not again work outside the home until 1984 or 1985 when she went back to work part-time. Most of her work has been in sales. In 1990, Paulette took some marketing classes at Southeast Area Vo–Tech in Sioux Falls and has had one night class in computer-assisted design. Paulette also has some health problems. As previously alluded to, she has back problems which led to surgery in 1989. Her back problems may recur. She also suffers from allergies which have occasionally caused her to be bedridden with bad headaches.

This divorce action was commenced November 7, 1990. A trial was held August 23, 1991, at which time both parties testified. During the course of trial Paulette testified that in 1988 she thought she made $10,000. Subsequent to trial, Steve obtained copies of Paulette's W–2 tax statements. As these forms showed that Paulette's trial testimony greatly understated her 1988 wages, Steve filed a motion to reopen. This motion was made two weeks after the court's memorandum opinion of August 30, 1991, wherein the trial court noted that Paulette was capable of earning only minimum wages. The court, without holding a hearing, denied the motion.

In December, 1991, the court entered its judgment granting Paulette a decree of divorce on grounds of extreme cruelty. Child custody and support payments, as well as alimony and property division were ordered. Steve appeals, arguing (1) the trial court abused its discretion when it ordered alimony and child support payments which exceed the total of his monthly income; (2) the trial court was clearly erroneous in its identification and division of the marital assets; and (3) the trial court abused its discretion when it denied his motion to re-open.

## DECISION

### ISSUE I

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ITS IDENTIFICATION AND DIVISION OF THE MARITAL ASSETS.

■ A trial court's findings "will not be set aside unless they are clearly erroneous." *Tate v. Tate,* 394 N.W.2d 309, 310 (S.D.1986). "This court will not disturb a division of property unless it clearly appears the trial court abused its discretion." *Kanta v. Kanta,* 479 N.W.2d 505, 507 (S.D. 1991); *Johnson v. Johnson,* 471 N.W.2d 156, 159 (S.D.1991); *Fox v. Fox,* 467 N.W.2d 762, 766 (S.D.1991).

*1. Retirement Plan.*

We look first to Steve's allegation that the trial court abused its discretion when it awarded half of his retirement plan to Paulette. Steve has been a member of the Teamster's Union for sixteen years. His Teamster's pension plan vested after ten years. The present retirement value of his retirement plan is $200/month upon reaching age sixty-five.

■ "In South Dakota a retirement plan has been recognized as a divisible marital asset since it represents consideration in lieu of a higher present salary. Contributions made to the pension plan would have been available to the family as disposable income during the marriage." *Stemper v. Stemper,* 403 N.W.2d 405, 408 (S.D. 1987) (citations omitted). Steve argues that because there was no evidence presented that the retirement plan was funded in lieu of a higher present salary, or that it affected his family's disposable income during the marriage, the retirement plan is not marital property subject to division. We note that even a non-contributory pension plan is a marital asset even though such a plan has no effect on disposable income during the marriage. *Stemper,* 403 N.W.2d at 407–08. The pension plan benefits were clearly accrued during the marriage and are therefore, a marital asset subject to division. *Id. See also Kanta,* 479 N.W.2d at 510; *Stubbe v. Stubbe,* 376

N.W.2d 807, 809 (S.D.1985). The trial court did not abuse its discretion by including the accrued pension plan benefits as a part of the marital assets to be divided. However, the division, if any, of this marital asset is to be reconsidered on remand as more fully discussed below.

### 2. Use of Marital Home.

Steve also argues that the trial court abused its discretion when it awarded the use of the marital home to Paulette until the youngest child is emancipated.[2]

The trial court's judgment and decree reads in part that "[t]he parties (sic) real estate shall be held in an undivided interest one-half (½) to each party. [Paulette] shall be awarded the use of the real estate until the youngest child attains the age of eighteen years or graduates from high school whichever event occurs later, but in no event past the youngest child's nineteenth birthday." The house, with a fair market value of $70,000, represents the parties' major marital asset.[3]

Where "the welfare and best interests of the children require ... [the trial] court may assign the use and possession of the marital home to the custodial parent[.]" *Johnson v. Lowary,* 81 S.D. 202, 206, 132 N.W.2d 823, 825 (1965). Paulette argues that it would be a major disruption to the children's lives to force them to move due to a sale of the home. We are not persuaded. The oldest child is emancipated. An affidavit in the record shows an intent on the part of the middle child to move out. There is little in the record to indicate that a move would be more disruptive to the youngest child than to any child.

During the marriage of these parties, they purchased three marital homes. Their contributions to the purchase of the first home were approximately equal. A second home was acquired with assistance from Paulette's father in the form of $5,000 for the downpayment, $4,000 of which has apparently been repaid. These two homes were sold; the proceeds and $35,000 borrowed from a bank were used for the purchase of the home and small acreage here at issue.

There was testimony that the bank mortgage on the marital home was paid off in a lump sum with money borrowed from Steve's mother. Both parties acknowledge the money was not a gift and Steve was making $400/month house payments to his mother until Steve became unemployed. Steve testified his father had drawn up some type of a repayment schedule to which Steve and Paulette agreed, although there was no formal promissory note between the Bells and Steve's mother. Steve further testified, and presented an exhibit at trial in support of his testimony, that he owed his mother in excess of $14,000 on that loan. Steve had also been making additional payments to his mother against other borrowed sums of money totaling in excess of $24,000. All payments stopped by December, 1990, after this divorce proceeding was commenced and Steve was no longer employed.

Undisputed testimony shows a minimum of $14,000 is still owing to Steve's mother on the house loan. Paulette received substantial sums of money from Paulette's father in addition to the downpayment on the second home. The court noted in its memorandum opinion that it could not determine the amounts of the loans from Steve or Paulette's parents. Though this may be true, the court's subsequent finding that the debts of the parties were only $5,830 is clearly erroneous and must be set aside, *Tate,* 394 N.W.2d at 310, as the evidence clearly shows a substantial

---

2. We do not address Steve's preference that the house be sold and the proceeds divided.

3. The trial court found that the parties have the following additional marital assets:
   1. A Certificate of Deposit valued at $2,000.00.
   2. Bonds valued at $212.00, which Steve has cashed.
   3. Tax refund checks of $1,780.00.

4. Steve's Teamster's retirement account which has a current value benefit of $200.00 per month.

5. Life insurance policies with cash values of $1,520.75 (Steve's); $2,588.52 (Steve's); and $1,271.45 (Paulette's).

6. Personal property (the distribution of which was stipulated to prior to trial).

sum of money is still owed on the home. Although the trial court need not be perfect in its valuations, the findings of the court must at least be within the range of evidence before it. *Moser v. Moser*, 422 N.W.2d 594, 597 (S.D.1988). *See also Cole v. Cole*, 384 N.W.2d 312, 314 (S.D.1986); *Goehry v. Goehry*, 354 N.W.2d 192, 194 (S.D.1984).

■ In light of the substantial under-evaluation of the parties' debt on the home, to allow Paulette free use of this home was an abuse of discretion. We therefore remand for a redetermination of marital assets and debts and their proper division.[4] If, after reconsideration, the trial court again determines that it is appropriate that Paulette have the use and occupancy of the home until the youngest child reaches majority, Steve "would be entitled to have h[is] interest in the real property protected by suitable provisions ... requiring the payment of taxes, incumbrance, and the cost of upkeep and repair by [Paulette] during the period of its occupancy by [Paulette] and the minor children." *Lowary*, 81 S.D. at 206, 132 N.W.2d at 825.[5]

### ISSUE II

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ALIMONY TO PAULETTE.

Paulette was awarded $250/month as alimony until her remarriage or the death of either party. Steve asserts he is unemployed, his unemployment benefits have expired, and he has no funds after the property division out of which to make an alimony payment.

■ The award of alimony is within the sound discretion of the trial court "and its judgment will not be set aside unless it clearly appears that it abused its discretion." *Strickland v. Strickland*, 470 N.W.2d 832, 838 (S.D.1991). "[D]ue regard must be given to the opportunity of the trial court to judge the credibility of the witnesses and weigh their testimony." *Tate*, 394 N.W.2d at 310. In determining an alimony award,

> the trial court should consider the length of the marriage; the respective earning capacity of the parties; their respective financial condition after the property division; their respective age, health and physical condition; their station in life or social standing; and the relative fault in the termination of the marriage.

*Brooks v. Brooks*, 470 N.W.2d 827, 829 (S.D.1991); *Strickland*, 470 N.W.2d at 838; *Parsons v. Parsons*, 469 N.W.2d 581, 583 (S.D.1991). The trial court made findings on most of these considerations, but failed to state the implications to be drawn from them.

The parties were married approximately nineteen years and were thirty-nine years old at the time of trial. We have previously noted that a redetermination of the marital assets and debts must be made. We note, however, the parties have few liquid assets and most of those are pledged as collateral for loans correctly assigned to Paulette. The most liquid items, the tax refunds, were split equally, leaving each party in roughly the same non-liquid position. Although both parties have health problems, the record does not show that either party is incapable of working full-time. The parties do not live a high lifestyle. Even though Paulette was awarded a divorce on grounds of extreme cruelty,

---

4. In *Morrison v. Morrison*, 323 N.W.2d 877 (S.D. 1982), this court found the trial court did not abuse its discretion by awarding the family residence solely to the wife and children. That award was characterized as a lump-sum alimony award which was apparently the only portion of the judgment of divorce appealed. We found no errors by that trial court in its divorce decree which is in sharp contrast to the instant one where we are reversing the majority of the trial court's judgment and remanding for reconsideration of every issue raised by Steve.

5. Although not influencing our decision, we note that Paulette recites in her brief that at the conclusion of the divorce trial, Steve's mother commenced an action against Steve and Paulette for repayment of the money given them to refinance the marital home. As a result, Paulette borrowed $25,000 against the home to repay Steve's mother. *See Bell v. Bell, Lincoln County*, Civ. No. 91–159.

the trial court made no specific finding relative to fault so we do not consider the parties' alleged marital improprieties.

■ Steve asserts the court erred in its determination of the respective earning capacities of the parties. We agree with the trial court's finding that Steve has a demonstrated ability to earn $30,000/year. We disagree with the trial court's finding that Steve has a *present* capability of earning a gross monthly income of $1,900/month, or $11.00/hour, which is the maximum wage Steve earned in Kansas City over the last three years.

Steve has held only one job outside the trucking industry, the gardening job, which earned $10.00 an hour. There is no evidence regarding his wages in the few additional odd jobs he has had. He is currently unemployed, through circumstances beyond his control, despite his applications for work with dozens of trucking firms. The record is devoid of anything which would indicate Steve purposely became unemployed to avoid either alimony or child support payments. We note that at least in part, Steve went to Kansas City because all he could find in Sioux Falls were minimum wage jobs. Although Steve has not sought work outside of the trucking industry wherein he has been employed since high school, there is no evidence before the trial court which could lead to the conclusion that as a practical matter, Steve can presently earn $11.00 an hour. The court was clearly erroneous when it determined that Steve had a present capability of earning $1,900/month.

■ The court was also clearly erroneous when it determined Paulette has the ability to earn only a minimum wage for a gross of $737/month. The trial court had before it the parties' 1988 joint tax return. The total salaries reported were almost $42,000. Even if we assume Steve worked the entire year, which was not the case, the 1988 income tax return shows that Paulette had to have made at least $12,000 that year. But because Steve did not work through all of 1988, Paulette's actual wages exceeded $12,000. The court's finding is substantially below what the evidence showed.[6] *See Moser*, 422 N.W.2d at 597. We therefore remand for a redetermination of their earning capacities.[7]

## ISSUE III

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED STEVE TO PAY PAULETTE $482 PER MONTH AS CHILD SUPPORT.

■ "An award of child support must be reasonable and suitable to the child's present situation in life and the father's present financial means and ability to pay." *Straub v. Straub*, 381 N.W.2d 260, 261 (S.D.1986); *Fossum v. Fossum*, 374 N.W.2d 100, 101–02 (S.D.1985). We have previously decided the trial court's determination of the present earning capabilities of Steve and Paulette was erroneous. Therefore, child support must also be redetermined on remand.

## ISSUE IV

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED STEVE'S MOTION TO REOPEN.

■ On September 13, 1991, Steve moved the court "to reopen this matter and to reconsider issues affected by the enclosed [1987] W–2 tax statement of Paulette A. Bell."[8] Steve's motion was denied *without a hearing* on September 19. The motion was filed months before the court issued its findings of fact and conclusions of law. Steve alleges the court's denial of his motion was an abuse of discretion.

---

6. Paulette's earnings in 1989 and 1990 were substantially lower than in 1988 due in part to her back surgery and the accompanying recovery period. The evidence does not show either party's ability to work in the future is impaired.

7. This will necessarily lead to a redetermination of those portions of the judgment which were set as a percentage of each party's income.

8. Steve recites in his brief that he would also have presented Paulette's 1988 W–2 to the court had a hearing been granted.

Steve cites no authority to support his position. We deem this issue waived. *Fox*, 467 N.W.2d at 768; *Nielsen v. McCabe*, 442 N.W.2d 477, 480 (S.D.1989); SDCL 15–26A–60(6).

Steve also asks for relief from the final judgment or order pursuant to SDCL 15–6–60(b)(1), (3) & (6) or under equity. He again cites no authority. Nevertheless, we have on occasion addressed issues in the absence of authority for their support. *See Kostel Funeral Home v. Duke Tufty Co.*, 393 N.W.2d 449, 452 (S.D.1986). Because we have previously determined that the trial court erred and must redetermine the issues, he has in effect been granted relief. In that context, we note that at the request of the court, the parties' joint federal income tax returns for 1988, 1989 and 1990 were before the court at trial. Their 1987 federal income tax return was not before the court nor, apparently, was there testimony regarding her wages for 1987. Steve does not say why the W–2s were not available and presented at trial.

The earning capacities of the respective parties is always a consideration in a determination of an award of alimony and child support. Counsel is expected to offer proof at trial of the necessary facts upon which the trial court can base its decision. It would seem the use of W–2 tax statements to identify the past wage contributions would be almost a routine item of evidence, whether or not specifically requested by the court. Nevertheless, for whatever reason, Steve did not present Paulette's W–2 tax statements at trial.

Paulette substantially misstated her wages for the year 1988. Subsequent to the trial, Steve obtained copies of Paulette's W–2s for 1987 and 1988. Her 1987 W–2 shows she earned in excess of $19,000. He alleges her 1988 W–2 shows she earned in excess of $23,500. The 1987 W–2 statement presented to the court in Steve's motion was not tied to any other testimony presented to the court. Nevertheless, the trial court is directed to consider Paulette's 1987 and 1988 W–2 statements as an aid to more accurately determine the earning capacities of the parties.

The parties' request for appellate attorney fees is denied.

Affirmed in part, reversed in part, and remanded for further proceedings consistent herein.

HENDERSON, J., concurs.

WUEST, SABERS and AMUNDSON, JJ., concur in part and concur specially in part.

AMUNDSON, Justice (concurring in part and concurring specially in part).

This court has previously held it is within the trial court's discretion to provide a home for the minor child or children of the parties. *Stearns v. Stearns*, 80 S.D. 443, 126 N.W.2d 124 (1964). Therefore, I do not agree that the trial court abused its discretion in awarding the use of the residence to the mother and children so that they can attempt to maintain their lifestyle during the children's minority.

On the other hand, I agree with the majority's position that, under the facts of this case, such an award of use cannot be without consideration of other factors, such as debt payment, real estate taxes being paid on a current basis, insurance on the residence with Steve as a named insured, and each owner's responsibility for maintenance and upkeep being clearly delineated. In order for these factors to be considered in the redetermination of the property, a remand is necessary.

I concur in total on all other issues.

I am authorized to state that Justice WUEST and Justice SABERS join in this writing.