2002 SD 24

**Patricia M. DIVICH, Plaintiff and Appellant,**

v.

**Richard Allen DIVICH, Defendant and Appellee.**

**No. 21918.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 7, 2002.

Decided Feb. 20, 2002.

Rebecca A. Porter, Rapid City, South Dakota, for plaintiff and appellant.

Elizabeth M. Frederick, Rapid City, South Dakota, for defendant and appellee.

PER CURIAM.

[¶ 1.] Patricia M. Paul appeals from an order granting her former husband, Richard Divich, relief from a judgment and decree of divorce. We reverse and remand.

### FACTS

[¶ 2.] Patricia and Richard were married in 1960 and divorced in 1988. As part of the divorce proceedings, the parties entered into a stipulation and property settlement agreement later incorporated into the divorce decree. Richard was employed as a teacher in the Rapid City School System and Paragraph VI of the agreement attempted to provide for the division of Richard's retirement fund administered by the South Dakota Retirement System. Paragraph VI provided:

A. [Patricia] shall have a vested interest in [Richard's] retirement program under the South Dakota Retirement System. [Patricia's] interest shall be defined as:

1. Fifty percent (50%) of the benefit multiplied by the number of years during the marriage in which contributions to the program were made and divided by the total number of years in which contributions were made to the program.

2. [Patricia] shall be entitled to this division of the benefits whenever [Richard] should draw on his benefits. More specifically, should [Richard] liquidate the account prior to retirement, [Patricia's] share would be determined as above and distributed directly to her at the time of liquidation. If on the other hand [Richard] continues the account until he commences to draw retirement benefits therefrom, [Patricia's] share of the benefits shall be determined as above and be paid to her with the same frequency as the benefit received by [Richard].

3. That [Richard] shall maintain [Patricia's] status as survivor benefit on the existing retirement plan according to the terms thereof which will provide the greatest benefit to her in the event of his death.

[¶ 3.] As he was preparing to retire in March 2000, Richard filed a motion for

relief from these provisions of the property settlement agreement and divorce decree pursuant to SDCL 15–6–60(b)(6).[1] As grounds for the motion, Richard alleged the settlement agreement did not reflect the parties' true intention as to the retirement fund and did not equitably divide the fund. As a remedy, Richard sought an equitable division of the retirement fund in the form of a lump sum payout to Patricia.

[¶ 4.] A hearing was held on the motion for relief in January 2001. During the hearing, the trial court heard extensive evidence and expert testimony from both parties on the meaning of the retirement provisions in the parties' property settlement agreement. At the close of the hearing, the trial court entered oral findings of fact and conclusions of law that were subsequently adapted as written findings and conclusions.

[¶ 5.] The trial court found the retirement provisions of the parties' property settlement agreement to be ambiguous. As a result, the trial court found that there was never any agreement between the parties on the division of the retirement fund. The trial court further determined that it would be "overreaching and inequitable" to grant Patricia a lifetime benefit from Richard's retirement account. Accordingly, the trial court awarded Patricia a lump sum payout in the amount of $59,000 plus post-judgment interest until paid in full.

[¶ 6.] The $59,000 payout figure was derived from the refund value of Richard's retirement account at the time of his retirement, i.e., $172,183.40. The refund value was based upon the total contributions made to the retirement account by Richard and his employer during the duration of Richard's employment. Pursuant to the formula contained in subparagraph A1 of the retirement clause of the property settlement agreement, the trial court multiplied the refund value ($172,183.40) by 50% and multiplied that result by the number of years during the marriage in which contributions were made to the retirement account (i.e. 26 years). The trial court then divided that result by the total number of years in which contributions were made to the retirement account (i.e., 38 years). This yielded a figure of $58,904.85 which the trial court rounded up to an even $59,000 and awarded to Patricia. Patricia appeals.

## ISSUE

[¶ 7.] **Did the trial court abuse its discretion in granting Richard's motion for relief from judgment?**

■■■ [¶ 8.] Patricia argues that the trial court abused its discretion in granting Richard's motion for relief from the parties' judgment and decree of divorce. We agree.

"Relief under SDCL 15–6–60(b) is granted only upon a showing of exceptional circumstances." "The purpose of Rule 60(b) is to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscious that justice be done in light of all the facts."

Any decision to grant or deny such relief "rests within the sound discretion of the

---

1.  SDCL 15–6–60(b)(6) provides:
    On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
    \* \* \*
    (6) Any other reason justifying relief from the operation of the judgment.
    The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken.

trial court and will not be disturbed on appeal except for abuse."

*Pesicka v. Pesicka*, 2000 SD 137, ¶¶ 17–18, 618 N.W.2d 725, 728 (citations omitted).

An abuse of discretion is " 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' " This Court will review the matter to determine " 'whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached the conclusion.' "

*Barnaud v. Belle Fourche Irr. Dist.*, 2000 SD 57, ¶ 23, 609 N.W.2d 779, 784 (citations omitted).

[¶ 9.] The trial court granted Richard's motion for relief from judgment on the basis of an ambiguity it perceived in the stipulation and property settlement agreement incorporated in the divorce decree. " 'Contractual stipulations in divorce proceedings are governed by the law of contracts.' " *Pesicka*, 2000 SD 137 at ¶ 6, 618 N.W.2d at 726 (quoting *Houser v. Houser*, 535 N.W.2d 882, 884 (S.D.1995)). " 'Whether the language of a contract is ambiguous is ... a question of law.' " *Id.* (quoting *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D. 1986)). This Court reviews questions of law de novo with no deference given to the trial court. *State v. Perovich*, 2001 SD 96, ¶ 11, 632 N.W.2d 12, 16.

[¶ 10.] Rules for resolving whether ambiguity exists in a contract are set forth in *Pesicka:*

"A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." [*Alverson v. Northwestern Nat. Cas. Co.,*] 1997 SD 9, ¶ 8, 559 N.W.2d at 235 (citations omitted).

"In determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intentions of the parties." *Singpiel v. Morris*, 1998 SD 86, ¶ 10, 582 N.W.2d 715, 718. The intention of the parties is determined by "look[ing] to the language the parties used." *Id.* "If that intention is clearly manifested by the language of the [Stipulation and Agreement], it is the duty of this court to enforce it." *In Re Estate of Stevenson*, 2000 SD 24, ¶ 14, 605 N.W.2d 818, 821.

In determining [the existence of] ambiguity we have stated:

A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

*Singpiel*, 1998 SD 86, ¶ 16, 582 N.W.2d at 719 (citations omitted).

*Pesicka*, 2000 SD 137 at ¶¶ 8–10, 618 N.W.2d at 727.

[¶ 11.] Applying these standards here, we hold that the trial court did err as a matter of law in finding ambiguity in the parties' stipulation and property settlement agreement. The argument at the hearing on the motion for relief from judgment was that the terms "benefit" and "benefits" in the retirement provisions of the settlement agreement were ambiguous. After some convoluted testimony [2] on this issue from an attorney with the South Dakota Retirement System, from Patricia's original attorney who drafted the

---

**2.** The confusion in this testimony demonstrates the danger in taking evidence on the meaning of contract terms that are otherwise plain, clear and unambiguous.

agreement, from a local Rapid City attorney with expertise in drafting retirement clauses in property settlement agreements and from Richard himself, the trial court agreed with Richard's claims of ambiguity finding: "As to the instant matter, the word 'benefit' is not described within the stipulation, nor is it defined by law within this realm[.]"

[¶ 12.] The trial court erred in its finding. The word "benefit" has a plain meaning: "A payment made or an entitlement available in accordance with a wage agreement[.]" *See e.g.* The American Heritage College Dictionary, 127 (3rd ed. 1997). The word "benefits" also has an ascribed meaning in the provisions of law on the South Dakota Retirement System: "the amounts paid to a member, or spouse and family, or beneficiary as a result of the provisions of this chapter[.]" SDCL 3–12–47(11). A review of SDCL ch. 3–12 reveals two typical ways that members are paid amounts from the system: first, a member terminating his public service is entitled to withdraw his accumulated contributions from the system including his employer's contributions (*see* SDCL 3–12–76; 3–12–47(2)); second, a member who retires in the system may claim his retirement benefits in the form of a monthly payment (*see* SDCL 3–12–112). Even the attorney for the Retirement System did not dispute this view of "benefits" when he testified that, "Benefit to us at the system means any kind of payout, be it a lump sum payout, disability sum, or retirement income, or a lump sum payout to beneficiaries after a member has died[.]"

[¶ 13.] Applying this meaning of "benefits" to the parties' stipulation and property settlement agreement yields no ambiguity in the provisions on the division of Richard's retirement fund. The agreement clearly provides that if Richard liquidates his account prior to retirement, Patricia's share should be distributed to her at the time of liquidation according to the formula set forth in subparagraph A1 of the settlement agreement. In any event, by the time of the trial court proceedings, Richard had already retired and the lump sum distribution formula was no longer relevant. Insofar as calculation of Patricia's share of Richard's monthly benefit, the agreement provides that her share should be calculated according to the formula in subparagraph A1 and that the benefits should be paid "with the same frequency as the benefit received by [Richard]." At the time of the trial court proceedings, Richard's monthly retirement benefit was $3,071.84. Fifty percent of that amount is $1,535.92. Multiplying that amount by the number of years during the marriage in which contributions were made to the retirement account (*i.e.*, 26 years) and dividing that result by the total number of years in which contributions were made (*i.e.*, 38 years), yields a monthly benefit amount for Patricia of $1,050. That is the monthly amount the trial court should have awarded to Patricia and it erred in determining otherwise.

[¶ 14.] Having reached this result on the basis of Patricia's first issue, we find it unnecessary to address her remaining substantive issues.

## ATTORNEY'S FEES

[¶ 15.] By motion and affidavit, Patricia sought a trial court award of $4,151.24 in attorney's fees she incurred in defense of Richard's motion for relief from judgment. The trial court denied the motion ruling that each party should bear their own costs, fees and expenses. Patricia argues the denial was an abuse of discretion. In

view of our reversal on the merits of the trial court's order and judgment, we also reverse the trial court's denial of Patricia's motion for attorney's fees and remand the issue to the trial court for re-determination in light of our holding above.

[¶ 16.]    Reversed and remanded.

[¶ 17.]    GILBERTSON, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, participating.