2003 SD 73

**Patricia M. DIVICH, Plaintiff and Appellant,**

v.

**Richard Allen DIVICH, Defendant and Appellee.**

**No. 22537.**

Supreme Court of South Dakota.

Considered on Briefs April 28, 2003.

Decided June 18, 2003.

---

Rebecca A. Porter, Rapid City, for plaintiff and appellant.

Elizabeth M. Frederick, Frederick Law Office, Rapid City, for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] This appeal is brought by Patricia Paul (formerly Patricia Divich) after a remand hearing in which the trial court entered a disputed Qualified Domestic Relation Order (QDRO) and denied attorney's fees to Patricia. We reverse and remand as to the QDRO and the denial of attorney's fees.

## FACTS AND PROCEDURE

[¶2.] Patricia and Richard Divich divorced in 1988 after twenty-eight years of marriage. Richard, who was a teacher for the Rapid City School System, receives retirement benefits through the retirement fund administered by the South Dakota Retirement System. The parties' decree of divorce incorporated the provisions of their Stipulation and Property Settlement Agreement. As part of the settlement, the following paragraph was included:

A. [Patricia] shall have a vested interest in [Richard's] retirement program under the South Dakota Retirement System. [Patricia's] interest shall be defined as:

1. Fifty percent (50%) of the benefit multiplied by the number of years during the marriage in which contributions to the program were made and divided by the total number of years in which contributions were made to the program.

2. [Patricia] shall be entitled to this division of the benefits whenever [Richard] should draw on his benefits. More specifically, should [Richard] liquidate the account prior to retirement, [Patricia's] share would be determined as above and distributed directly to her at the time of liquidation. If on the other hand [Richard] continues the account until he commences to draw retirement benefits therefrom, [Patricia's] share of the benefits shall be determined as above and be paid to her with the same frequency as the benefit received by [Richard].

3. That [Richard] shall maintain [Patricia's] status as survivor benefit on the existing retirement plan according to the terms thereof which will provide the greatest benefit to her in the event of his death.

[¶3.] In *Divich v. Divich*, 2002 SD 24, ¶11, 640 N.W.2d 758, 761 (*Divich I*), we reversed and remanded the trial court's finding that the retirement provisions of the parties' property settlement agreement was ambiguous. We also reversed and remanded the trial court's denial of Patricia's motion for attorney's fees for a re-determination. *Divich I*, 2002 SD 24, ¶15, 640 N.W.2d at 763.

[¶4.] On remand, the trial court denied Patricia's motion for attorney's fees and also rejected her proposed QDRO, which attempted to provide that if Patricia predeceased Richard, her share of the retirement benefits would be payable to her estate. Instead, the trial court entered a QDRO which provided that if Patricia predeceased Richard, her share of the retirement benefits would revert back to him.

[¶5.] Moreover, on July 8, 2002, the trial court entered a QDRO that contained the following clause to which Patricia objected:

The Alternate Payee shall receive a separate monthly payment (assignment) from the Plan equal to 34.2% of the benefit that the Participant otherwise would receive from the Plan on a monthly basis. The monies shall be paid simultaneously with the benefit payment from the Plan to the Participant and shall continue until the earlier of the Alternate Payee's death or the Participant's death. After this assignment, the Participant shall have no remaining rights to the portion assigned. *If the Alternate Payee does predecease the Participant, then and in that event, all of the monthly benefit payment from the Plan thereafter shall be paid to the Participant.*

(emphasis added.)

[¶6.] Patricia brings this appeal and raises the following issues:

1. Whether Patricia's share of retirement benefits is a property right

that should be paid to Patricia's estate if she predeceases Richard.

2. Whether the trial court abused its discretion when it denied Patricia's application for attorney's fees.

## STANDARD OF REVIEW

[¶ 7.] According to *Kanta v. Kanta,* 479 N.W.2d 505, 507 (S.D.1991), we will not "disturb a division of property unless it clearly appears the trial court abused its discretion." *Id.* (citing *Johnson v. Johnson,* 471 N.W.2d 156 (S.D.1991); *Fox v. Fox,* 467 N.W.2d 762 (S.D.1991); *Studt v. Studt,* 443 N.W.2d 639 (S.D.1989)). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Kanta,* 479 N.W.2d at 507 (citing *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984); *Rykhus v. Rykhus,* 319 N.W.2d 167 (S.D.1982); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981); *Davis v. Kressly,* 78 S.D. 637, 107 N.W.2d 5 (1961)). The interpretation of a retirement provision contained within a property settlement is a question of law reviewed by this Court de novo. *Divich I,* 2002 SD 24, ¶ 9, 640 N.W.2d at 761.

[¶ 8.] According to *Zepeda v. Zepeda,* we review the denial of attorney fees in a divorce action under the abuse of discretion standard. 2001 SD 101, ¶ 27, 632 N.W.2d 48, 57 (citing *Whalen v. Whalen,* 490 N.W.2d 276, 284 (S.D.1992) (*modified on other grounds*) (citations omitted)).

## ANALYSIS AND DECISION

[¶ 9.] **1. Whether Patricia's share of retirement benefits is a property right that should be paid to Patricia's estate if she predeceases Richard.**

[¶ 10.] Patricia argues that the trial court should have entered her pro-

posed QDRO. Specifically, she argues that there is no language in the parties' Stipulation and Agreement indicating that Patricia agreed to divest her share of Richard's retirement benefits if she predeceases him. Therefore, she contends, when the trial court entered a QDRO that provided if she predeceased Richard her share of the retirement benefits would return to him, it was an impermissible modification of the property settlement.

[¶ 11.] " 'In South Dakota a retirement plan has been recognized as a divisible marital asset since it represents consideration in lieu of a higher present salary. Contributions made to the pension plan would have been available to the family as disposable income during the marriage.' " *Bell v. Bell,* 499 N.W.2d 145, 147 (S.D. 1993) (quoting *Stemper v. Stemper,* 403 N.W.2d 405, 408 (S.D.1987)). However, despite this well-settled point of law that a retirement plan is a property right, the trial court found that "when [Patricia's] gone, [her share of that retirement fund] goes with her."

[¶ 12.] Whether a share of a retirement plan awarded in a divorce action is a property right which should continue to be paid to the estate of a spouse who predeceases the employee spouse, is a case of first impression for this Court. Richard relies on *Ablamis v. Roper,* 937 F.2d 1450 (9thCir.1991), for the assertion that benefits provided for under a retirement plan may not be assigned or alienated. Richard, therefore, argues that Patricia's proposed QDRO was correctly rejected by the trial court.

[¶ 13.] In *Ablamis,* the parties were married in California, a community property state, and remained married until the wife passed away. 937 F.2d at 1452. In Mrs. Ablamis' will, she devised "all property subject to [her] testamentary power including [her] one-half community proper-

ty ... assets [she] may have." Thereafter, the executrix of her estate asserted that the property should include all community property, including a one-half interest in her husband's pension rights, which were fully vested. *Id.* at 1455. However, the Ninth Circuit Court of Appeals disagreed and found that ERISA's spendthrift provisions preempted any state community property law. 937 F.2d at 1456–57. In the case at hand, as agreed to by both parties, the South Dakota Retirement System plan is exempt from federal legislation. *See* 29 U.S.C. § 1003(b)(1). Furthermore, even if it was not exempted, *Ablamis* acknowledged that ERISA's spendthrift provisions are not applicable to QDROs. *Id.* at 1456.

■ [¶ 14.] Next, Richard argues that the purpose of retirement plans is to provide for participants and their dependents or surviving spouses during their lifetime. Nonetheless, an interest in a retirement plan is marital property, subject to an equitable division. *See, e.g., Grode v. Grode,* 1996 SD 15, ¶ 24, 543 N.W.2d 795, 802. We note that Wade Hubbard, a witness appearing from the South Dakota Retirement System, referenced a form for a QDRO which treated the retirement benefit as a fixed asset which would go to the spouse's estate upon the spouse's death. Moreover, in examining whether an item is marital property or alimony, "it is not the label that is placed on the award that controls, but rather the nature of the award." *Saxvik v. Saxvik,* 1996 SD 18, ¶ 16, 544 N.W.2d 177, 180 (citing *Hautala v. Hautala,* 417 N.W.2d 879, 882 (S.D. 1988)). Patricia argues that if Richard had the resources to buy out Patricia's share of his retirement at full value, that money would be hers to use as she pleased. Further, if she died before using the money, then it would pass to her es-

tate. Therefore, it follows that if she receives a monthly payment, instead of a lump sum award, then that payment should continue to be paid to her estate. We agree with Patricia's argument and hold that her proposed QDRO should have been entered.

[¶ 15.] **2. Whether the trial court abused its discretion when it denied Patricia's application for attorney's fees.**

■ [¶ 16.] In *Divich I,* we stated that "[i]n view of our reversal on the merits of the trial court's order and judgment, we also reverse the trial court's denial of Patricia's motion for attorney's fees and remand the issue to the trial court for redetermination in light of our holding above." 2002 SD 24, ¶ 15, 640 N.W.2d at 762–63. On remand, the trial court denied Patricia's request for attorney's fees but allowed trial and post appeal costs, as she was the prevailing party.

■ [¶ 17.] In determining whether to award attorney's fees, "a court may consider the property each party owns; their relative incomes; the nature of their assets, fixed or liquid; and whether either party unreasonably prolonged the divorce." *Zepeda,* 2001 SD 101, ¶ 28, 632 N.W.2d at 57. The trial court determined that both parties were responsible for their respective attorney's fees because there was a "legitimate dispute to sort out the language of the stipulation." In light of our reversal of Issue One, we remand to the trial court for a consideration of an award of attorney's fees of not less than $3,000.

[¶ 18.] Patricia has also made a request for appellate attorney's fees to which she has attached an itemized statement. We award appellate attorney's fees in the amount of $3,000.

[¶ 19.] SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

[¶ 20.] ZINTER, Justice, concurs in part and dissents in part.

ZINTER, Justice (concurring in part and dissenting in part).

[¶ 21.] I concur in all of the Court's opinion, except that portion of Issue 2 that reverses the trial court's decision to deny Patricia's attorney fees incurred at trial. In the prior appeal, this Court remanded the attorney fee issue to the trial court for consideration. The trial court subsequently entered findings reflecting that it considered appropriate standards. The trial court denied Patricia's request because this case involved a legitimate dispute, both parties expended considerable attorney fees and expenses, and Richard did not unreasonably increase the cost of these proceedings.

[¶ 22.] In my view, a decision made for these reasons is not an abuse of discretion; i.e., discretion exercised to an end or purpose not justified by, and clearly against reason and evidence. *See supra*, ¶ 7. Here, both parties incurred substantial attorney fees in a lengthy dispute, the trial court expressly found that Richard did not unreasonably delay the proceedings, and this dispute involved a case of first impression in this jurisdiction. *See supra*, ¶ 12. Moreover, we have only had the benefit of reviewing the party's briefs on two occasions, while the trial court considered the attorney fee issue after substantial involvement with the parties throughout the trials preceding both appeals. Under these circumstances, I would affirm the trial court's decision on fees incurred at trial.