#24249-a-RWS

**2007 SD 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DOUGLAS K. JACKSON and
STACEY E. JACKSON,                                    Plaintiffs and Appellees,

  v.

CANYON PLACE HOMEOWNER'S
ASSOCIATION, INC.,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

KURT E. SOLAY
MICHELLE C. BRATTON of
Thomas, Nooney, Braun,
  Solay & Bernard, LLP
Rapid City, South Dakota                             Attorneys for plaintiffs
                                                     and appellees.

THOMAS E. SIMMONS of
Gunderson, Palmer, Goodsell & Nelson, LLP
Rapid City, South Dakota                             Attorneys for defendant
                                                     and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2007

OPINION FILED **04/11/07**

SABERS, Justice

[¶1.]    Douglas K. Jackson and Stacey E. Jackson (Jackson) brought a declaratory action against Canyon Place Homeowner's Association (Homeowner's Association) alleging the use of a community dumpster on one of the lots violated Canyon Place Subdivision's (subdivision) restrictive covenants.  The parties brought cross-motions for summary judgment.  The circuit court granted Jackson's motion for summary judgment and Homeowner's Association appealed.  We affirm.

## FACTS

[¶2.]    The parties stipulated to the following facts.  The subdivision, located in the Black Hills, is subject to restrictive covenants that were recorded in October of 1995.  The particular covenant in question, number seven, provides:

> No lot shall be used or maintained as a dumping ground for rubbish.  Garbage or other waste materials shall be kept in sanitary containers and all incinerators, composters, and other equipment for storage or disposal of such material shall be kept in a clean and sanitary condition.  No outdoor storage of non-functional or unused automobiles, boats, motor homes, or refuse will be allowed.  Recreational vehicles and boats will be stored out of public view or garaged.

[¶3.]    In September of 1998, a meeting of the Homeowner's Association was held, where the members in attendance decided to construct a community dumpster.  The action was taken because individual garbage pick-up was costly and less practical during the winter months due to some steep roads.  Neither Jackson was at the meeting.

[¶4.]    In 1999, Homeowner's Association poured a concrete pad on the Quinn Lot and placed an eight-foot-wide dumpster on the concrete pad to be used as the

community dumpster. This dumpster is across from Jackson's driveway and visible from the common road and Jackson's property. Rhonda Quinn, owner of the Quinn lot, later granted an easement for the placement of the dumpster in June of 2002. The easement is recorded, but Jackson contests its validity. The Homeowner's Association enclosed the dumpster with a wood fence in 2003.

[¶5.] Jackson has fought against the community dumpster since 1999. The community dumpster has been discussed at every Homeowner's Association meeting from 1999 to 2005. Jackson objected to the location of the dumpster and any improvements or future expansion plans. In 2004, Jackson told the Homeowner's Association meeting that the community dumpster violated the covenants. Jackson made a motion for the removal of the dumpster and proposed each household should arrange for individual garbage service. Jackson's proposal failed to carry a majority vote.

[¶6.] At the 2005 homeowner's meeting, Jackson reiterated that the community dumpster violated the subdivision's covenants. Jackson then brought a declaratory judgment action against Homeowner's Association. Both parties filed motions for summary judgment. The circuit court granted Jackson's summary judgment motion and ordered Homeowner's Association to remove the community dumpster within sixty days and permanently enjoined it from placing a community dumpster on any lot in the subdivision, "in so far as such placement violates the covenants." Homeowner's Association appeals.

## STANDARD OF REVIEW

[¶7.] Since the parties stipulated to the facts, there are no disputed facts precluding summary judgment. The trial court's "interpretation of a covenant is a legal question which we review de novo." Halls v. White, 2006 SD 47, ¶4, 715 NW2d 577, 579 (citing Harksen v. Peska, 1998 SD 70, ¶11, 581 NW2d 170, 173).

[¶8.] **Whether the restrictive covenant that states no lot shall be used as a dumping ground for rubbish prohibits a community dumpster site for garbage.**

[¶9.] The interpretation of a restrictive covenant involves the same rules of construction for contract interpretation. *Id.* ¶7 (citing *Harksen*, 1998 SD 70, ¶¶11-20, 581 NW2d at 173-74). When the wording of the covenant is unambiguous, "its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." *Id.* We have noted that,

> A term is ambiguous if it is reasonably capable of being understood in more than one sense. Piechowski v. Case, 255 NW2d 72, 74 (SD 1977). Thus, a covenant is ambiguous if we have "a genuine uncertainty as to which of two or more meanings is correct." *Harksen*, 1998 SD 70, ¶15, 581 NW2d at 173 (citation omitted). A finding of ambiguity, however, requires more than the disagreement of two parties as to the meaning of a term.

*Id.*

[¶10.] Jackson claims, and the circuit court agreed, that the plain meaning of the words used in the covenant prohibit the use of a community dumpster. Homeowner's Association argues that the plain meaning of the covenant wording merely prohibits garbage from being left loose on the ground. It maintains that the garbage is required to be in "sanitary containers" and the community dumpster meets the covenant requirements.

[¶11.] The terms, "dumping ground" and "rubbish" are not defined in the document. However, failing to define terms does not automatically result in an ambiguity. *Halls*, 2006 SD 47, ¶8, 715 NW2d at 581. We may use statutes and dictionary definitions to determine the plain and ordinary meaning of undefined words. *Id.*; Devich v. Devich, 2002 SD 24, ¶12, 640 NW2d 758, 762 (consulting the American Heritage College Dictionary and South Dakota statutes to define the term "benefit").

[¶12.] The dictionary definition of "ground" is "the surface of the earth; an area used for a particular purpose." Merriam Webster Dictionary Online, located at www.m-w.com (last viewed on April 6, 2007). "Dump" is defined as "to let fall in or as if in a heap or mass; to get rid of unceremoniously or irresponsibly." *Id.* The dictionary also specifically lists "to dump refuse" as an example of word usage. More importantly, "dumping ground" is also defined in this dictionary, as "a place to which unwanted people or things are sent." *Id.* "Rubbish" is "useless waste or rejected matter." The dictionary specifically lists trash as an example of rubbish.

[¶13.] If the plain meaning of "dumping ground" is a place where unwanted things are sent, then a community dumpster is a dumping ground. Members of the subdivision send their unwanted rubbish or trash to the dumpster. According to the restrictive covenant, the Homeowner's Association cannot use the Quinn lot, or any other lot, as a dumping ground for rubbish. Therefore, it cannot use the lot for a community dumpster.

[¶14.] Interpreting line one of covenant seven to prohibit the community dumpster is strengthened when viewed in conjunction with the covenant's third

sentence. *See* Dissolution of Midnight Star, 2006 SD 98, ¶12, 724 NW2d 334, 337 ("We . . . give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation."). Line three of the covenant provides in part, "no outdoor storage of . . . refuse will be allowed." Given the plain meaning of the words used in both lines one and three of covenant seven, the community dumpster is clearly prohibited.

[¶15.] Homeowner's Association argues that rubbish means "abandoned refrigerators, drums, or disabled vehicles." However, the term is not defined that particular way in the covenant. Garbage fits into the categories of "rubbish" and "refuse" and the dictionary specifically lists trash as an example of rubbish.

[¶16.] Moreover, Homeowner's Association's claim that the second line of covenant seven, "garbage must be in sanitary containers," means the covenant is not violated by a community dumpster is without merit. The community dumpster may satisfy that second line, but it does not satisfy the first or third line of covenant seven, especially when the third line of covenant seven, which provides in part, "no outdoor storage of . . . refuse will be allowed" is considered. Because the first and third lines of covenant seven do not allow for the use of a community dumpster or outside storage of refuse, we affirm.

[¶17.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶18.] ZINTER and MEIERHENRY, Justices, concur in result.

MEIERHENRY, Justice (concurring in result).

[¶19.]    I concur in result and agree that the language of the covenant prohibits the use of a community dumpster.  However, the third sentence of the provision rather than the first sentence creates the prohibition.  The first sentence merely prohibits using one of the lots for dumping rubbish on the ground.  Here, rubbish is not being dumped on the ground; it is stored on the lot in garbage containers.  Thus, the facts do not fall within the first sentence's prohibition.  It is the third sentence in the provision that applies.  The third sentence prohibits "outdoor storage of . . . refuse."  The dictionary definition of refuse is "trash." American Heritage Dictionary 1040 (2ded 1985).  Consequently, trash cannot be stored outdoors.  Since the community dumpster accumulates and stores trash outdoors on one of the lots, it violates the covenant.

[¶20.]    ZINTER, Justice, joins this special writing.