2004 SD 116

**David R. REASER, Plaintiff and Appellant,**

v.

**Jami D. REASER, Nee Twiss, Defendant and Appellee.**

**No. 23115.**

Supreme Court of South Dakota.

Considered on Briefs on Aug. 23, 2004.

Decided Oct. 13, 2004.

Thomas E. Brady of Brady & Plumier, Spearfish, South Dakota, Attorneys for plaintiff and appellant.

Gregory J. Barnier, Rapid City, South Dakota, Attorney for defendant and appellee.

ZINTER, Justice.

[¶ 1.] Former husband appeals an order setting aside the portions of his four-year-old divorce decree that dealt with child custody, child support, alimony, and property division. The decree was set aside because the trial court found that it had been obtained by a fraud upon the court. We affirm.

### Facts and Procedural History

[¶ 2.] David and Jami Reaser were married in August 1985. From the fall of 1989, through the end of their marriage, the parties lived on David's parents' family ranch. David worked on the ranch, and Jami worked in the home taking care of the children. David was also involved in a ranching partnership arrangement with his father during this time.

[¶ 3.] The parties separated in the fall of 1998. Jami took the parties' two children with her to live at her grandmother's home, approximately four miles from the ranch. In January of 1999, David initiated divorce proceedings. David was represented by attorney Michael Ortner, and Jami was not represented.

[¶ 4.] The parties entered into a stipulation, prepared by Ortner, concerning child custody, child support, alimony, and property division. Under the stipulation, David was to have custody of the children. The stipulation further provided that Jami waived any claim to alimony and David relieved Jami of any obligation for child support. Ortner presented this stipulation and a proposed decree of divorce to Circuit Judge Janine Kern. However, Judge Kern refused to grant the divorce because the stipulation did not provide for child support for the children.

[¶ 5.] Consequently, the parties modified the stipulation to establish a child support obligation for Jami. However, prior to submitting this revised stipulation to the court, Ortner drafted a "document of private agreement" in which Jami "was to have no duty to pay ongoing [child] support despite the language of the Divorce Decree."[1] This "private agreement" was kept in Ortner's office and was not disclosed to Judge Kern when the revised stipulation and proposed decree were resubmitted six days later.[2]

[¶ 6.] Thus, the divorce decree was obtained despite the fact that it was known that Judge Kern would not have granted it without a child support obligation. Furthermore, the revised stipulation neither

---

1. Ortner filed an affidavit admitting these facts. He also admitted that the "agreement of non-support" was signed by both parties in his office, and that he retained the original, signed "Private Contractual Agreement."

2. The parties' private agreement was signed on March 29 and March 30, 1999. Without knowledge of the private agreement, Judge Kern approved the second stipulation on April 6, 1999.

disclosed the underlying financial circumstances of the parties nor whether Jami had been advised of the size and value of the marital estate. Consequently, the court was also unaware of potential inequities in the division of property.[3]

[¶ 7.] In the fall of 2001, less than three years after the divorce, David's parents sold their ranch. From the proceeds, they gave David a gift of over $300,000. In November of that same year, David moved to Cody, Wyoming with his new wife and the children.

[¶ 8.] In May 2002, Jami moved for a change in custody. She also sought child support from David. The motions were heard by Circuit Judge Thomas Trimble. During the course of that hearing, the parties' private agreement first came to light. Following an evidentiary hearing, Judge Trimble denied Jami's motion for change of custody and told David that he was free to seek child support from Jami.

[¶ 9.] David then initiated a child support action against Jami. The child support matter was heard by a referee, who recommended that Jami pay current child support and arrearages. The referee's recommendation was adopted by the circuit court on March 31, 2003, and became an interim order for support. Jami subsequently filed motions to set aside the interim order for support, to approve a visitation agreement, and to eliminate the child support arrearages. Jami's supporting affidavit asserted that her agreement to make no claim to a portion of the marital assets, David's interest in the family ranch partnership, and alimony was based on

David's private agreement to not seek child support.

[¶ 10.] Jami's motions were heard by Judge John J. Delaney, who expressed serious concern about the deception created by the private agreement. Because he ultimately concluded that the parties' decree of divorce was obtained by fraud upon Judge Kern, he went beyond the specific relief requested in Jami's motion, and he vacated those portions of the divorce decree that dealt with child custody, child support, alimony, and property division.

[¶ 11.] David then filed a motion asking Judge Delaney to reconsider. Among other things, the motion to reconsider pointed out that even if there had been a fraud upon the court, Judge Trimble determined the best interests of the children in a contested child custody hearing. The motion to reconsider also pointed out that there had been no showing of a change in circumstances sufficient to change the custody arrangement ordered by Judge Trimble.

[¶ 12.] A hearing on David's motion to reconsider was held on January 5, 2004. On January 22, Judge Delaney signed a written opinion granting the motion to reconsider and vacating that portion of his order that had vacated Judge Trimble's child custody determination. However, on January 23, 2004, before Judge Delaney's written decision was filed, David filed a notice of appeal from the original decision vacating the divorce decree. On January 27, 2004, four days after the notice of appeal was filed, Judge Delaney's Amended Order[4] reinstating David's child custody was filed.

---

3. When the divorce proceedings began, David transferred his interest in the family ranching operation back to his parents. At that time, he had credit card and cash advance debts related to gambling of $70,000.

4. Judge Delaney's amended order reinstated Judge Trimble's child custody determination, but left intact Judge Delaney's original order vacating the child support, alimony and property provisions. Judge Delaney never vacated the original decree granting the divorce.

[¶ 13.] David appeals raising the following issues:

1. Whether the trial court erred in setting aside the parties' decree of divorce over four years after its entry.

2. Whether the trial court erred in vacating the original child custody provision, and, in the alternative, whether the trial court properly amended the child custody decision after the notice of appeal had been filed.

**Analysis and Decision**

*Authority to Set Aside a Four Year Old Decree of Divorce Obtained by Fraud Upon the Court.*

[¶ 14.] Judge Delaney originally set aside the child custody, child support, alimony, and property provisions of David and Jami Reaser's 1999 divorce decree. The trial court did so, essentially upon its own motion, because of the parties' private agreement and the court's finding of a fraud upon the court. Because of the seriousness of this matter, the trial court's relevant findings of fact are set forth verbatim. The trial court found:

11. That at the institution of these proceedings [David] was represented by Mr. Michael Ortner.

12. That at the institution of the divorce proceedings [Jami] was unrepresented.

13. That prior to the completion of the divorce action [David] transferred his interest in the family ranching operation back to his father and mother.

14. That a stipulated divorce, placing custody of the children with [David], waiving alimony claims by [Jami], and waiving any child support to be paid by [Jami] to [David], was presented to the [c]ourt.

15. The [c]ourt refused to issue a [d]ivorce [d]ecree based on the initial stipulated agreement because child support was not meaningfully addressed.

16. A second Stipulation was prepared and submitted to the [c]ourt which purported to establish a child support obligation from [Jami] to [David].

17. At the time the second Stipulation was prepared, unbeknownst [to the] [c]ourt there was a contemporaneous agreement between the parties [that] again waived any support obligation from [Jami] to [David].

18. Neither Stipulation disclosed to the [c]ourt the underlying financial circumstances of the parties, nor did it alert the [c]ourt to the fact that there may have been a gross inequity in the division of property between the parties.

19. There is no evidence upon which a [c]ourt can conclude that [Jami] was informed of her rights or of the size and value of the marital estate prior to the preparation of the Divorce Stipulation.

20. The [original trial court] executed the Divorce Decree ignorant of the fact that the parties had entered into a secret agreement drafted by counsel for [David] to bar the collection of any support by [David] from [Jami].

21. The secret agreement purports to do precisely what the [c]ourt had specifically refused to approve, and the execution of the Decree was predicated upon the express representation, through the Stipu-

lation, that a meaningful support obligation was established.

22. The "secret" or undisclosed agreement entered into between the parties was contrary to the [c]ourt's previous direction to counsel after review of the first [S]tipulation.

23. That the [previous trial court] would not have executed the Decree of Divorce, based upon the second [S]tipulation presented to it, had it been specifically advised by counsel and had it known that in fact the contemporaneous agreement waiving child support had been made.

24. The waivers of support and alimony appear to the [c]ourt to be intended to preclude any property division in funds or ranch property of the parties' sizeable interest in the family ranching operation.

25. The purported transfer from [David] to his father, during these divorce proceedings, of his interest in the family ranch operation was not an arms length transaction when considered in light of the income tax records and other limited financial information made available to the [c]ourt.

26. That when [Jami] subsequently moved for custody of the children in 2002, [David] "reneged" upon the secret agreement and attempted to obtain several years of past due child support.

27. That the review of the issues of support and visitation[,] which gave rise to these proceedings[,] led to the [c]ourt's discovery of the fraud perpetrated upon it in the course of the initial proceedings, granting the Divorce Decree.

[¶ 15.] Notwithstanding these findings, David argues that, rather than setting aside the decree, the trial court should have only voided the parties' private agreement. David also contends that the court erred because the motion[5] to set aside this decree was not made within one year as required by SDCL 15–6–60(b).[6] He points out that in a similar case, *Anderson v. Somers*, 455 N.W.2d 219 (S.D. 1990), this Court declined to set aside a decree two years after its entry.

[¶ 16.] We have held that:

"Relief under SDCL 15–6–60(b) is granted only upon a showing of exceptional circumstances." "The purpose of Rule 60(b) is to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscious that justice be done in light of all the facts."

---

5. The decision to set aside most of the decree was not made pursuant to Jami's motion. It was made *sua sponte* by the trial court, which vacated the decree *nunc pro tunc*.

6. SDCL 15–6–60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. Section 15–6–60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court.

*Divich v. Divich,* 2002 SD 24, ¶ 8, 640 N.W.2d 758, 760 (citation omitted). We review decisions to grant or deny Rule 60(b) relief under the abuse of discretion standard. *Id.*

[¶ 17.] At the outset, it should be noted that factually, David has not challenged Judge Delaney's findings that Judge Kern would not have entered the decree had she known about the secret agreement. Therefore, it does not appear that there is any dispute that this decree was obtained by a fraud upon the court.

[¶ 18.] With respect to the law, we observe that the time limitation in SDCL 15-6-60(b) provides that *a motion* "shall be made . . . not more than one year after" the order was entered. However, the statute also provides that a court is not so limited in its independent power to set aside a judgment or order in cases of fraud upon the court:

> It should be noted . . . that there is an express saving clause in Rule 60(b), which provides that 'this rule does not limit the power of a court . . . to set aside a judgment for fraud upon the court.' There is no time limit on the exercise of this power. And where it is possible to bring an independent action attacking the judgment, rather than proceeding by motion, the time limits of the rule do not apply.

*Gifford v. Bowling,* 86 S.D. 615, 623–624, 200 N.W.2d 379, 383 (1972) (citation omitted). In other words, "the power of a defrauded court to grant relief is a sweeping, plenary power that is not subject to any rigid time limitation as is a motion under 60(b)(3)." *Id.* (citation omitted).

[¶ 19.] This type of fraud is different than that associated with fraud upon the parties.

> 'Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication . . . In addition, it has been said that '[i]n order to set aside a judgment or order because of fraud upon the court under Rule 60(b), . . . it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.' Courts have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges, employment of counsel to 'influence' the court, bribery of the jury, and the involvement of an attorney (an officer of the court) in the perpetration of fraud.

*Id.* at 625, 200 N.W.2d at 384 (citations omitted). Here, under Judge Delaney's findings, the actions of these parties and the attorney are egregious conduct involving corruption of the judicial process itself. Considering those findings, this fraudulent conduct may have violated a criminal statute, and it certainly violated the Rules of Professional Conduct for attorneys.

[¶ 20.] Although this record is not perfectly clear, the conduct involving the second stipulation, when considered in conjunction with the private agreement, could conceivably violate SDCL 22-11-22, which provides that:

> Any person who prepares any false book, paper, record, instrument in writing, or other matter or thing with intent to produce it or allow it to be produced as genuine in any trial, proceeding, inquiry, or investigation authorized by law, is guilty of a Class 6 felony.

A reasonable person could conclude that under the facts of this case, the making of

the second stipulation was the preparation of a false instrument made with intent to produce it or allow it to be produced as genuine in a proceeding authorized by law.

[¶ 21.] Moreover, under the trial court's findings, Ortner's preparation of, and participation in, the concealment of the private agreement violated the Rules of Professional Conduct. "Because the courts of this state must rely upon the assistance of attorneys to ascertain the truth of matters before them, attorneys must be fair and forthright with the courts." *Matter of Discipline of Mines*, 523 N.W.2d 424, 426 (S.D.1994) (citing *Matter of Discipline of Schmidt*, 491 N.W.2d 754, 755 (S.D.1992)). Moreover, "the requirement of candor towards the tribunal goes beyond simply telling a portion of the truth. It requires every attorney to be fully honest and forthright." *In re Discipline of Wilka*, 2001 SD 148, ¶ 15, 638 N.W.2d 245, 249. It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. *Mines*, 523 N.W.2d at 426.

[¶ 22.] Ortner's conduct appears to violate that duty of candor toward the court. Rule 3.3 of the Rules of Professional Conduct provides in relevant part that:

(a) A lawyer shall not knowingly:

. . .

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall timely take reasonable remedial measures, including, if necessary, disclosure to the tribunal. . . .

(d) In an ex parte proceeding, except grand juries and applications for search warrants, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

[¶ 23.] Here, the trial court's findings indicate that both Ortner and the parties were dishonest in their representations and disclosures to the original divorce court. Their participation in, preparation of, and failure to disclose the "private agreement" allowed them to circumvent the original trial court's express direction. It was egregious conduct that corrupted the judicial process through the involvement of an officer of the court. This type of fraud upon the court is not subject to the Rule 60(b) one year time limitation. Consequently, Judge Delaney was authorized, upon his own motion, to vacate the relevant portions of the decree despite the fact that it had been in effect for over four years.[7]

*Setting Aside a Child Custody Decision after a Notice of Appeal Has Been Filed.*

[¶ 24.] When the parties were divorced in 1999, David received primary physical custody of their children by stipulation. As a result of Jami's motion to change custody in 2002, Judge Trimble conducted an evidentiary hearing and determined that it was in the best interests of the children for David to retain custody. Because Judge Trimble's custody order was entered following a contested hearing, David argues that Judge Delaney initially erred in vacating that custody order without a showing of a substantial change in circumstances. David points out that we have often indicated that "[t]o modify a custody decree after a contested hearing, the moving party must show a substantial change in circumstances." *Price v. Price,*

7. Therefore, David's reliance upon *Anderson* is misplaced. *Supra* ¶ 15.

2000 SD 64, ¶ 52, 611 N.W.2d 425, 436 (citing *Mayer v. Mayer*, 397 N.W.2d 638, 640 (S.D.1986)). We agree that, under settled authority, setting aside a custody adjudication requires a showing of a substantial change in circumstances, and that showing was not made to Judge Delaney.

[¶ 25.] However, Judge Delaney did correct the matter. On December 4, 2003, David filed a motion for reconsideration, which specifically raised the child custody issue. A hearing was then held on that motion on January 5, 2004, and Judge Delaney subsequently amended his order so that Judge Trimble's prior custody determination would remain in full force and effect. The problem is that Judge Delaney's amended order was not filed until January 27, 2004, four days after David had filed a notice of appeal to this Court.[8]

[¶ 26.] Because Judge Delaney's amended order dealt with the subject matter of this appeal, and because it was filed after David's notice of appeal was filed, Jami argues that the trial court lacked jurisdiction to enter the amended order. David responds that Jami did not file a notice of review on this issue. David asks this Court to affirm Judge Delaney's amended order reinstating Judge Trimble's custody determination.

[¶ 27.] Although Jami did not file a notice of review, "[j]urisdiction may be raised at any time." *Pennington County v. State ex rel. Unified Judicial System*, 2002 SD 31, ¶ 9, 641 N.W.2d 127, 130 (citing *Devitt v. Hayes*, 1996 SD 71, ¶ 6, 551 N.W.2d 298, 300). Furthermore, "[t]his Court may raise issues of jurisdic-

tion *sua sponte.*" *Id.* (citations omitted). We review questions of jurisdiction de novo. *Id.* (citations omitted).

[¶ 28.] "An appeal from a judgment or order strips the trial court's jurisdiction over the subject matter of the judgment or order except as to certain trivial matters; the Supreme Court then has jurisdiction until determination of the appeal." *Ryken v. Ryken*, 440 N.W.2d 307, 308 (S.D.1989)[9] (citing Matter of D.H., 354 N.W.2d 185 (S.D.1984)). Trivial matters include such things as acting on matters collateral to the subject matter of the appeal, enforcing judgments in the absence of a stay, and providing interim alimony. *In re Estate of Hoffman*, 2002 SD 129, ¶ 17, 653 N.W.2d 94, 100; *Cutler–Christians v. Christians*, 2001 SD 104, ¶ 9, 633 N.W.2d 176, 178. Courts:

have permitted further proceedings in the same case at the trial court level during appeal when the subject matter of the appeal would not be affected by such proceedings. *Matter of Tollefsrud's Estate*, 275 N.W.2d 412, 417 (Iowa 1979); *Majnaric v. Majnaric*, 46 Ohio App.2d 157, 158–59, 347 N.E.2d 552, 554 (1975); *Southland Corp. v. Village of Hoffman Estates*, 130 Ill.App.2d 311, 316–17, 264 N.E.2d 451, 454–55 (Ill. App1970); *Hunter v. Hunter*, 44 Wis.2d 618, 620, 172 N.W.2d 167, 169 (Wis 1969); *Osborn v. Riley*, 331 So.2d 268, 271 (Ala.1976); *Blackmon v. Blackmon*, 525 S.W.2d 711, 713 (Tex.Civ.App.1975). In these instances, the trial court is restrained from entering any order that would change or modify the judgment

---

8. An order is not effective until it is signed and filed. SDCL 15-6-58 provides in relevant part:

A judgment or an order becomes complete and effective when reduced to writing, signed by the court or judge, attested by the clerk and filed in his office.

9. "This rule applies even when an appellee files his motion prior to the filing of appellant's notice of appeal." *Id.* at 308 (citations omitted).

on appeal or have the effect of interfering with review of the judgment.

*Hoffman*, 2002 SD 129, ¶ 17, 653 N.W.2d at 100, n. 7.

[¶ 29.] Trial courts also retain jurisdiction to correct clerical mistakes arising from oversight or omission. SDCL 15–6–60(a). This type of error may be corrected during the pendency of an appeal before the settled record is transmitted, and thereafter, with leave of the Supreme Court. *Id.* Other courts have explained the nature of clerical errors.

" '[C]lerical' is employed in a broad sense as contradistinguished from 'judicial' error and covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge." (citations omitted).

"Moreover, ... FRCP 60(a), ... has been interpreted by federal courts ... "[A 'clerical error' under Rule 60(a)] is a type of mistake or omission mechanical in nature[,] which is apparent on the record and which does not involve a legal decision or judgment by an attorney." (citations omitted).

*Ramis Crew Corrigan & Bachrach, LLP v. Stoelk,* 193 Or.App. 700, 92 P.3d 154, 158 (2004). Thus, clerical corrections include the implementation of what was intended and what the court had accepted as the proper resolution. *United States v. Mansion House Center Redevelopment Co.,* 118 F.R.D. 487, 490 (1987) (citation omitted). They also include failure to memorialize part of a decision. *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 669 (5thCir.1986).

[¶ 30.] In this case, Judge Delaney heard the motion to reconsider on January 5, 2004, prior to the filing of the appeal. Moreover, Judge Delaney signed the amended order on January 22, 2004, one day before David filed his notice of appeal. Although the order was not filed until January 27, 2004, this physical act of filing was not a "legal decision." Rather, we believe it was the type of trivial or clerical matter that is permitted after an appeal has been filed. After all, Judge Delaney's judicial decision had been made, and the omission was a simple delay in the clerical act of filing the order with the clerk. Moreover, the amended order simply memorialized the decision that had been made before the notice of appeal was filed. Because we believe that the trial court retained jurisdiction over this type of clerical correction, there was no jurisdictional error in filing the previously signed order that reinstated Judge Trimble's child custody order.

[¶ 31.] Affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.