#24753-aff in pt & vac in pt-RWS

**2008 SD 117**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                                   Plaintiff and Appellee,

v.

A.B.,                                                              Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN J. DELANEY
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

MEGHAN N. DILGES
Assistant Attorney General
Pierre, South Dakota                                   Attorneys for plaintiff
                                                               and appellee.

KENNETH E. JASPER of
Jasper Law Office
Rapid City, South Dakota                              Attorney for defendant
                                                               and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 3, 2008

OPINION FILED **12/10/08**

SABERS, Justice.

[¶1.]        Defendant A.B. was charged with first degree robbery, or, in the alternative, second degree robbery.  He was also charged with conspiracy to commit first degree robbery and simple assault.  A.B.'s request to be transferred to juvenile court was denied.  He pleaded guilty to first degree robbery, in exchange for the State dropping all other charges.  A.B. was sentenced to 10 years in prison, with 6 years suspended.  He appeals, raising three issues:  (1) Whether the circuit court erred in refusing to transfer A.B. to juvenile court; (2) Whether the circuit court abused its discretion in not granting A.B.'s request for a suspended imposition of sentence; and (3) Whether the circuit court erred by amending the judgment to include restitution not imposed in the oral sentence.  We affirm the circuit court on the first two issues.  As to the third issue, we vacate the amended judgment.

## FACTS

[¶2.]        On June 9, 2007, A.B. and several others were partying at the Christy Steele residence in Rapid City.  A.B. later reported that he drank four or five 40-ounce beers at the party.  When the beer ran out, A.B., Anthony One Feather, and S.B.B. (co-Defendants) decided to go on a "beer run."  Witnesses from the party stated that the co-Defendants were passing around a silver and black BB gun and telling people they were going to use it to rob the liquor store.  Shortly after midnight, the co-Defendants robbed the Loaf 'N Jug convenience store and stole two 12-packs of beer, cash, and cigarettes.[1]  Store clerk Darren Good followed the co-

---

1.      One Feather acted as the lookout, while A.B. and S.B.B. carried out the robbery.  S.B.B. had possession of the BB gun.  S.B.B. brandished the weapon
(continued . . .)

Defendants out of the store. The co-Defendants beat, kicked, and broke a bottle of beer on Good's face, breaking Good's nose, causing massive bruising and lacerations to Good's face, causing Good's right eye to swell shut, and causing Good memory loss.

[¶3.]      On June 28, 2007, A.B. was indicted for one count of first degree robbery, or, in the alternative, second degree robbery, one count of conspiracy to commit first degree robbery, and one count of simple assault. A.B. requested a transfer to juvenile court. A transfer hearing was held on October 2, 2007. In addition to evidence relating to the June 9 incident, evidence and testimony were presented regarding A.B.'s family, school, and social history.

[¶4.]      At the time of this incident, A.B., an American Indian male, was 17 years old. He admitted to being a member of the North Side Gangster Cripps gang since age 14.[2] He also admitted to first using alcohol and marijuana when he was 14, and up to the date of the incident, had continued his use on nearly a daily basis. Until this incident, A.B. had no prior felony history. At age 16, however, A.B. was arrested for a disturbance at school, and subsequently violated his probation twice when he was reported as a runaway. A.B. also disclosed he was arrested on two

_____

(. . . continued)
      when he and A.B. walked up to the counter and demanded cash and cigarettes. Store clerk John Prondzinski testified that he believed the gun was real.

2.      Several witnesses testified that A.B. was wearing a blue and white jersey on the evening of the incident. The trial court intimated that blue and white are recognized gang colors.

separate occasions for minor in possession of alcohol, but both charges were dismissed.

[¶5.]    A.B. dropped out of school in the tenth grade.  He was involved with Job Corps for a limited period of time.  The record indicates that at the time of the proceedings, A.B. was working toward his General Education Development certificate.  From 2005 until the date of the incident, A.B. had been employed at Denny's, Grand Gateway Hotel, Golden Corral, and Ramada.

[¶6.]    Beginning at age 14, A.B. was faced with some difficult life events:  his mother and step-father (the only father he had known) divorced; his grandparents divorced; and his aunt and uncle divorced.  During this same time period, his favorite uncle died of a heart attack and one of his cousins died in a car accident.

[¶7.]    William Moss, Psy.D., conducted a psychological assessment of A.B. Dr. Moss determined that A.B. has an alcohol and drug dependence and a depressive disorder, is easily influenced by others, has no significant intellectual disabilities, and is functional within the norms for his age group.  Dr. Moss testified that much of A.B.'s present status is attributable to A.B.'s loss of a cousin and uncle.  Dr. Moss recommended that A.B. obtain chemical dependency treatment, psychological treatment for depression, and that he be supervised.  Ultimately, Dr. Moss testified that it would be in the public's and A.B.'s best interest for A.B. to be tried in juvenile court.

[¶8.]    On cross-examination, Dr. Moss admitted that, in conducting his assessment, he only met with A.B. on one occasion and with A.B.'s mother for an hour and fifteen minutes.  Furthermore, at the time of his assessment, Dr. Moss did

not have A.B.'s juvenile history records and did not know that A.B.'s mother had reported A.B. as a runaway on more than one occasion. Dr. Moss further admitted that if adjudicated as an adult, A.B. would have access to the same court services (i.e., substance abuse treatment, psychological therapy, etc.) as he would if transferred to the juvenile system. Importantly, Dr. Moss recognized that if A.B. was adjudicated as a juvenile, the juvenile system would only supervise him until age 21, which in A.B.'s case would be three years at most.

[¶9.]      Circuit Court Judge John J. Delaney denied A.B.'s transfer request because he did not believe it was in A.B.'s best interest, in particular, to be transferred to the juvenile system. Thereafter, A.B. changed his not-guilty plea to guilty. The sentencing hearing was held on December 3, 2007. A.B. requested a suspended imposition of sentence. His request was denied. He was sentenced to 10 years in the penitentiary, with 6 years suspended. Furthermore, he was ordered to pay $58.03 for transcript costs. During sentencing, Judge Delaney acknowledged, "And I don't have any restitution claims. If somebody is going to submit a restitution claim, they will have to do it. But right now there isn't any, and as far as I am concerned, it's closed. The sentence is done." The written judgment setting forth the $58.03[3] fine was filed on December 5, 2007.

[¶10.]      A.B. filed a notice of appeal to this Court on December 31, 2007. On January 8, 2008, an amended judgment with an effective date of December 3, 2007,

---

3.     The written judgment actually stated the cost as $53.08. The defense agrees that the transposition of numbers was a typographical error, correctable per SDCL 23A-31-2.

was signed and filed without a hearing or notice of a hearing. The amended judgment added the victim's restitution claim of $1,263.67 for medical expenses. On appeal, A.B. raises three issues. We restate them as follows:

1. Whether the circuit court erred in refusing to transfer A.B. to juvenile court.

2. Whether the circuit court abused its discretion in not granting A.B.'s request for a suspended imposition of sentence.

3. Whether the circuit court erred by amending the judgment after notice of appeal was filed to include restitution not imposed by the oral sentence.

## STANDARD OF REVIEW

[¶11.]     Our standard of review for issues 1 and 2 is well established:

> "An abuse of discretion occurs when 'discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *In re* L.M.G., 2007 SD 83, ¶6, 738 NW2d 71, 73-74 quoting Miller v. Jacobsen, 2006 SD 33, ¶18, 714 NW2d 69, 76. The test for an abuse of discretion is not whether we would reach the same result, but rather, "whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." State v. Crawford, 2007 SD 20, ¶13, 729 NW2d 346, 349 quoting Huber v. Dep't of Pub. Safety, 2006 SD 96, ¶22, 724 NW2d 175, 180.

State *ex rel.* White v. Brandt, 2008 SD 33, ¶11, 748 NW2d 766, 770. In addition, findings of fact are reviewed under the clearly erroneous standard. Osman v. Karlen and Assocs., 2008 SD 16, ¶15, 746 NW2d 437, 442 (quoting Fin-Ag, Inc. v. Feldman Bros., 2007 SD 105, ¶19, 740 NW2d 857, 862). "[W]e will only reverse when we 'are left with a definite and firm conviction that a mistake has been made[.]'" *Id.* The third issue presents a question of law, which is reviewed de novo.

**[¶12.]**   **1.    Whether the circuit court erred in refusing to transfer A.B. to juvenile court.**

**[¶13.]**    A.B. contends the circuit court erred in denying the transfer to juvenile court.  A.B. was 17 at the time of the incident, and he was charged with, among other lesser charges, first degree robbery, a Class 2 felony.  South Dakota law requires that a child of at least 16 years of age who commits a Class 2 felony be tried in circuit court as an adult.  SDCL 26-11-3.1.  Under the mandates of this statute, "the possibility of a juvenile being tried in adult court is presumed."  People *ex rel.* J.M.J., 2007 SD 1, ¶18, 726 NW2d 621, 629.  However, "[t]he law allows the child to request a transfer hearing 'to determine if it is in the best interest of the public that the child be tried in circuit court as an adult.'"  State v. Krebs, 2006 SD 43, ¶6, 714 NW2d 91, 94 (quoting SDCL 26-11-3.1).

**[¶14.]**    SDCL 26-11-4 sets forth seven factors that the court may consider in coming to its conclusion:

> (1) The seriousness of the alleged felony offense to the community and whether protection of the community requires waiver;
> (2) Whether the alleged felony offense was committed in an aggressive, violent, premeditated or willful manner;
> (3) Whether the alleged felony offense was against persons or property with greater weight being given to offenses against persons;
> (4) The prosecutive merit of the complaint.  The state is not required to establish probable cause to show prosecutive merit;
> (5) The desirability of trial and disposition of the entire felony offense in one proceeding if the child's associates in the alleged felony offense are adults;
> (6) The record and previous history of the juvenile;
> (7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if the juvenile is found to have committed the alleged felony

> offense, by the use of procedures, services, and facilities currently available to the juvenile court.

SDCL 26-11-4. The decision to transfer A.B. to juvenile court is within the circuit court's discretion. *See id.* However, the decision cannot be arbitrary. The record must contain "substantial evidence" supporting the court's decision. State v. Milk, 519 NW2d 313, 318 (SD 1994) (citations omitted). "If the court determines that the child should be tried as an adult in circuit court, the court is required to enter an order and findings of fact." *Krebs*, 2006 SD 43, ¶7, 714 NW2d at 95 (citing SDCL 26-11-4). The court's findings of fact upon which the denial to transfer to juvenile court was based shall "not be set aside upon review unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." SDCL 26-11-4.

[¶15.]        As identified in *Krebs*, we must first review the circuit court's findings of fact. 2006 SD 43, ¶8, 714 NW2d at 95. In its findings, the circuit court considered each of the statutory factors applicable to this case. The court found that the alleged offense was (1) "a serious threat to the community and to those who commit the crime[;]" (2) premeditated, involved a gun, involved the victim being "badly beaten," and "appear[ed] to be gang-related[;]" (3) "a robbery from people with the use of a fake but realistic appearing handgun" and in addition to the "subsequent physical assault[,]" it was "a violent crime, with a realistic threat of death, against people[;]" and (4) had prosecutive merit because "it appear[ed] to be a slam dunk[.]" All of these factors weighed against the case being transferred to juvenile court. Factor (5) did not impact the transfer analysis. The court determined that factor (6) slightly weighed against the transfer; even though A.B.'s

prior record was not particularly serious, A.B. did have two prior confrontations with the juvenile system.

[¶16.] As to factor (7), the circuit court specifically found: (1) A.B. "is a member of . . . a gang[,]" is "unwilling to testify against his codefendants[,]" and is likely to "return to the environment from which this matter developed[;]" (2) A.B. "has a multi-year history of daily drugs and frequent excessive use of alcohol[,]" "is both alcoholic and drug addicted[,]" and his "long[-]term recovery beginning with this event is, at best, highly unlikely[;]" (3) "[a]bsent a quantum shift in lifestyle, goals, education, friends, acquaintances and habits, the community at large is at risk from [A.B.;]" and (4) if transferred to juvenile court, supervision over A.B. "would likely be very short," but if kept in the circuit court, "supervision and control can continue for as many years as may be necessary[.]" In addition to the factors, the circuit court found that in light of A.B.'s age, "better, longer and closer supervision of [A.B.] can be established in adult court when compared to the juvenile court." Therefore, the court determined that it was in the best interests of both A.B. and the public that A.B. be tried as an adult.

[¶17.] A.B. claims that the circuit court clearly erred "in [its] application of these factors to this case" in light of the "case law establishing and considering these factors[.]" First, A.B. contends that the majority of the cases analyzing this issue involved juveniles with "significant juvenile histor[ies], more serious crimes, and long term needs for rehabilitation of the juvenile or to protect the public from a real perceived threat of further violence." In support of this contention, he cites *State v. Harris*, 494 NW2d 619 (SD 1993); *In Interest of A.D.R.*, 499 NW2d 906 (SD

1993); *State v. Jones*, 521 NW2d 662 (SD 1994); *State v. Jensen*, 1998 SD 52, 579 NW2d 613; *In Interest of Y.C.*, 1998 SD 76, 581 NW2d 483; *In re S.K.*, 1999 SD 7, 587 NW2d 740; and *Krebs*, 2006 SD 43, 714 NW2d 91.

[¶18.] Upon review of these cases, we recognize that several of the juveniles involved therein did in fact have lengthy juvenile histories. However, in one case the defendant had no criminal record, and was still tried as an adult. *See Krebs*, 2006 SD 43, ¶¶8, 14, 714 NW2d at 95, 97. Even though A.B.'s prior infractions were minor, he did have a juvenile history and had admitted to other indiscretions not noted in his record. Furthermore, although some of the crimes involved in the cited cases were more serious than first degree robbery, some of these cases in which the juvenile was, or this Court found should have been, tried as an adult involved first degree robbery and lesser crimes. *See S.K.*, 1999 SD 7, 587 NW2d 740 (first degree robbery, escape, simple assault); *Y.C.*, 1998 SD 76, 581 NW2d 483 (first degree robbery; commission of felony while armed with firearm). *See also Milk*, 519 NW2d at 313 (assault); State v. Flying Horse, 455 NW2d 605 (SD 1990) (first degree burglary, third degree burglary, grand theft of an automobile). Lastly, regarding the need for long-term rehabilitation, Judge Delaney specifically found, in addition to other conditions, that A.B. was "both alcoholic and drug addicted." One of the reasons for denying the transfer was because significant progress would not likely be made in treating A.B.'s conditions due to the limited time he would be in the juvenile system.

[¶19.] Second, A.B. contends that the court's findings are clearly erroneous because the court made findings contrary to Dr. Moss's expert testimony, which in

certain respects was not countered by the State's evidence. "[T]he mere fact that an expert testifies does not mean that his or her opinion must be accepted by the trial court." *Jensen*, 1998 SD 52, ¶54, 579 NW2d at 622. In *Jensen*, we further explained that "[a] trial court, when also sitting as the fact finder, is the sole judge of the credibility of the witnesses and can accept or reject all or part of the expert's testimony." *Id.* (citations omitted). A.B. has not proven that the court erred in adopting or rejecting Dr. Moss's testimony as it deemed fit based on the witness's credibility.

[¶20.]     Lastly, A.B. claims the court clearly erred because certain findings lacked evidentiary basis. Specifically, A.B. argues there was no evidentiary basis underlying the following findings: (1) that the crime was gang-related and that there was no indication that A.B.'s gang connection had been broken; (2) that A.B. "contemplated the [robbery];" and (3) that the safety of the community could not be protected with A.B. being transferred to the juvenile system. First, A.B. admitted to being a member of the North Side Gangster Cripps gang, he was wearing blue and white on the night of the robbery, and he refused to testify against his co-Defendants. Furthermore, the record indicates that witnesses from the party heard the co-Defendants say they were going to use the gun to rob the liquor store. This factor indicates contemplation and premeditation of the robbery. Lastly, the third point is a conclusion made within the circuit court's discretion upon hearing all the evidence. We hold there was sufficient evidence before the court allowing it to establish all these findings.

[¶21.]     We cannot say that the circuit court's findings were clearly erroneous or that its decision to not transfer A.B. to juvenile court was an abuse of discretion. The circuit court is affirmed on this issue.

[¶22.]     **2.     Whether the circuit court abused its discretion in not granting A.B.'s request for a suspended imposition of sentence.**

[¶23.]     A.B. contends that the circuit court erred in its sentence because it did not indicate whether it considered A.B.'s request for a suspended imposition of sentence. A.B. claims that failure to indicate consideration of the request prevents determination of "whether or not the ends of justice, and the best interest of the public and A.B. would be served thereby." We disagree.

[¶24.]     Article 5, Section 5 of the South Dakota Constitution provides, in part: "Imposition or execution of a sentence may be suspended by the court empowered to impose the sentence unless otherwise provided by law." The legislature's restrictions on imposing a suspended sentence lie in SDCL 23A-27-13. SDCL 23A-27-13 states in pertinent part,

> Upon receiving a verdict or plea of guilty for a misdemeanor or felony not punishable by death or life imprisonment by a person never before convicted of a crime which at the time of conviction thereof would constitute a felony in this state, a court having jurisdiction of the defendant, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby may . . . suspend the imposition of sentence . . . .

A.B.'s situation does not meet any of the statutory limitations; therefore, the court, if it so desired, could have suspended the imposition of A.B.'s sentence. However, the statute does not require the sentencing judge to set forth the reasons for granting or denying the suspended imposition of sentence.

[¶25.]     The statutory language "may" places the decision to suspend the sentence within the circuit court's discretion. This has been addressed in our case law:

> The granting of suspended imposition of sentence . . . is strictly a matter of grace and rests solely within the discretion of the court. It is not a matter of right or entitlement and the exercise of that discretion includes the imposition of conditions.

State v. Divan, 2006 SD 105, ¶16, 724 NW2d 865, 872 (quoting White Eagle v. State, 280 NW2d 659, 660 (SD 1979)). In this case, A.B. admitted to using drugs and alcohol on an almost daily basis since age 14. This case involved a dangerous crime involving not only a gun, but a serious assault to another human being. Further, A.B.'s family was not emotionally available to A.B. and did not help him obtain the treatment and counseling he needed. Lastly, when compared to the juvenile system, the adult system would have longer supervision over A.B. to ensure he received the necessary treatment and counseling. In light of all of these reasons, it is plausible that Judge Delaney was not "satisfied that the ends of justice and the best interest of the public as well as the defendant [would] be served" by suspending imposition of sentence. *See* SDCL 23A-27-13. The statutory maximum for first degree robbery is 25 years in prison and $50,000 fine. A.B. was sentenced to 10 years in the penitentiary, with 6 years suspended. To deny suspension of imposition of sentence was within Judge Delaney's discretion. The circuit court is affirmed as to this issue.

[¶26.]     **3.     Whether the circuit court erred by amending the judgment after notice of appeal was filed to include restitution not imposed by the oral sentence.**

[¶27.] At sentencing, A.B. was ordered to pay the standard fees and costs, including one-third of the transcript costs, or $58.03. Judge Delaney then asked the State for the amount of restitution claims, to which the State responded it did not have a number. The court then stated, "And I don't have any restitution claims. If somebody is going to submit a restitution claim, they will have to do it. But right now there isn't any, and as far as I am concerned, it's closed. The sentence is done." The written judgment containing the $58.03 was filed on December 5, 2007, with December 3, 2007 being the effective date. A.B. filed a notice of appeal to this Court on December 31, 2007. On January 8, 2008, an amended judgment with an effective date of December 3, 2007, was signed by Judge Delaney and filed without a hearing or notice of a hearing. The amended judgment added the victim's restitution claim of $1,263.67 for medical expenses.

[¶28.] The general rule is that "the written sentence must conform to the court's oral pronouncement." State v. Thayer, 2006 SD 40, ¶8, 713 NW2d 608, 612 (citing State v. Ford, 328 NW2d 263, 267 (SD 1982); State v. Cady, 422 NW2d 828, 830 (SD 1988); State v. Munk, 453 NW2d 124, 125 (SD 1990); State v. Bucholz, 403 NW2d 400, 402-03 (SD 1987); State v. Hughes, 62 SD 579, 584, 255 NW 800, 802 (1934)). It is unnecessary for us to apply that general rule here, however, because the circuit court did not have jurisdiction to amend the sentence. The victim's restitution was added on January 8, 2008, more than a week after A.B. filed his notice of appeal. In *Tosh v. Schwab*, we stated:

> An appeal from a judgment strips the trial court of power over the subject matter of the judgment, and this Court has jurisdiction until the appeal is decided. Reaser v. Reaser, 2004 SD 116, ¶28, 688 NW2d 429, 437; *In re* Estate of Hoffman, 2002

> SD 129, ¶17, 653 NW2d 94, 100; Ryken v. Ryken, 440 NW2d 307, 308 (SD 1989); *Matter of* D.H., 354 NW2d 185 (SD 1984). Consequently, once a notice of appeal has been filed, a "trial court is restrained from entering any order that would change or modify the judgment on appeal or have the effect of interfering with review of the judgment." *Reaser*, 2004 SD 116, ¶28, 688 NW2d at 437-38 (citing *Hoffman*, 2002 SD 129, ¶17, 653 NW2d at 100 n7).

2007 SD 132, ¶33, 743 NW2d 422, 431-42. *See also* Zephier v. Catholic Diocese of Sioux Falls, 2008 SD 56, ¶22, 752 NW2d 658, 667. In this case, the circuit court lacked jurisdiction to amend the sentence by adding the victim's restitution claim. The amended judgment is vacated.

[¶29.] This decision does not preclude the victim from a remedy. A civil suit in accordance with South Dakota law is still available for Good to recoup his medical expenses and to bring any other claims he may have against the co-Defendants.

[¶30.] Affirmed in part and vacated in part.

[¶31.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.